**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**UNITED STATES OF AMERICA,**

**vs.**
                               **Case No. 4:94cr4046-WS
Case No. 4:06cv227-WS/WCS[1]**

**WASEEM MINHAS,
and NAVEEN MINHAS,**

      **Defendants.**

_____/


## REPORT AND RECOMMENDATION

Defendant Waseem Minhas, represented by Robert Harper, Esq., filed a motion to vacate or set aside sentence by a defendant no longer in federal custody, and a memorandum of law in support of petition for writ of error *coram nobis*. Docs. 55 and 56. Defendant Naveen Minhas, also represented by Mr. Harper, filed a motion to vacate or set aside a sentence by a defendant no longer in federal custody, and a memorandum of law in support of petition for writ of error *coram nobis*. Docs. 65 and

_____

[1] Neither Defendant proceeds under 28 U.S.C. § 2255 as neither is in custody. The clerk filed the petition of Naveen Minhas as a § 2255 motion, however, and assigned a civil case number. Both petitions have been filed in the criminal case and given document numbers.

66.  Defendants were discharged from the sentence of probation in 1996.  Docs. 49

(copy attached to doc. 56 as Ex. B) and 50 (copy attached to doc. 66 as Ex. B).  The

Government responded to Defendants' motions.  Docs. 64 and 71.  Defendants filed

replies.  Docs. 69 and 72.  In response to my order, doc. 76, Defendants filed a

supplemental reply.  Doc. 77.

**Procedural History**

The indictment charged each Defendant with making a false statement in an

application for passport in violation of 18 U.S.C. § 1542.  Doc. 1, counts one (Waseem

Minhas) and three (Naveen Minhas).  Each was also charged with knowing possession

of a false identification document with the intent to defraud the United States in violation

of 18 U.S.C. § 1028(a)(4).  *Id.*, counts two (Waseem Minhas) and four (Naveen

Minhas).  The offenses were committed on or about June 10, 1994.  Both Defendants

were charged with conspiring with each other, from about August 10, 1993, to about

August 5, 1994, to commit offenses against the United States, namely the § 1542 and §

1028 offenses.  *Id.*, count five.

Defendants each signed a statement of facts and entered into a plea agreement,

agreeing to plead guilty to the § 1542 count.  Docs. 27 and 28 (Waseem Minhas), and

30 and 31 (Naveen Minhas).  Rearraignment for both Defendants was held on October

3, 1994.  Doc. 54 (transcript).  They were advised of the charges and possible penalties.

*Id.*, pp. 9-10.  They were advised of their rights to plead not guilty and proceed to a jury

trial, that a group of jurors would be drawn from the area, and the attorneys would select

the jurors in their presence.  *Id.*, p. 11.  They were advised of the right to call and

confront witnesses, the presumption of innocence, and the right to testify or to not

testify.  *Id.*, pp. 11-12.  They were advised that a sentencing report would be prepared to which they could object, and that they would have the right to appeal the sentence but not to withdraw the plea if dissatisfied with the sentence.  *Id.*, pp. 13-14.

Both Defendants agreed to their statement of facts and pleaded guilty.  *Id.*, pp. 14-15.  The court found that the facts stated indicated a violation of § 1542.  *Id.*, p. 15.  Both Defendants agreed there were no promises aside from what was set forth in the plea agreement.  *Id.*, p. 16.  The court accepted the guilty pleas.  *Id.*, p. 18.

Sentencing was held on December 21, 1994.  Doc. 53 (transcript).  Defendants were each placed on probation for 36 months.  *Id.*, p. 5.  Defendants were advised of the right to appeal.  *Id.*, pp. 5-6.  The remaining counts against Defendants were dismissed.  *Id.*, p. 6.  The judgments were entered on the docket on December 30, 1994.  Docs. 41 and 42.  No appeal was filed.

A memorandum dated August 15, 1995 (quoted at length, *infra*), was written to the court by the probation officer regarding Defendants' request to travel to Pakistan to attend a wedding.  Doc. 46 (memorandum and approval), p. 2.  Approval was granted for travel.  *Id.*, p. 1.  Defendants retrieved their passports from the clerk for this travel.  *Id.*

On July 13, 1996, early termination of probation was granted.  Docs. 49-52.  The transcripts were filed in December of 2002 and January of 2003.  Docs. 53 and 54.  The current motions for Waseem and Naveen Minhas were filed in December, 2005, and May, 2006, respectively.

**Claims**

Petitioner Waseem Minhas alleges that he had ineffective assistance of counsel with regard to his guilty plea.  Doc. 55, p. 4.  Waseem Minhas was represented by William Clark at trial.  Petitioner asserts under penalty of perjury that his attorney:

> erroneously advised Petitioner that his conviction would not trigger deportation consequences.  Defense counsel told Petitioner that if he served his sentence, he would receive his passport back when his probation was completed.

*Id.*, pp. 5-6.  *See also*, Petitioner's affidavit.  Doc. 56, Ex. D, p. 2; p. 25 on the electronic docket (ECF).  Petitioner asserts that this was misadvice because he had a prior state misdemeanor conviction for prostitution, a crime of moral turpitude.  Doc. 55, p. 6.  He asserts this offense, coupled with his guilty pleas in the instant case, resulted in several "crimes of moral turpitude" that would trigger deportation under 8 U.S.C. § 1182(a)(2)(A)(i)(I).  *Id.*  Petitioner contends that if he had been correctly advised as to the deportation consequences of his guilty pleas, he could have insisted upon going to trial with respect to the offense of making a false statement on a passport application, or, in the alternative, would have entered a guilty plea to some other offense that was not a crime of moral turpitude.  *Id.  See also*, Petitioner's affidavit, doc. 56, Ex. D, p. 3; p. 26 on ECF. Petitioner contends that there were strong mitigating factors in favor of a plea to a lesser offense, that is, lack of a significant criminal record, close family ties in the United States, the non-violent nature of his crime, and the fact that the passport was only for personal use.  Doc. 55, p. 6.

As a second claim, Petitioner Waseem Minhas alleges that the court failed to adequately define a jury trial, thus making his plea involuntary and not knowingly made.

*Id.* He argues that the court should have told him that the jury would consist of twelve members and that the verdict must be unanimous. *Id.*, p. 7.

Petitioner Waseem Minhas states further in his affidavit that he learned that he could not obtain a lawful permanent resident green card on May 19, 2003. Doc. 56, Ex. D, p. 2; p. 25 on ECF. He states that on the same day, deportation proceedings were initiated against him. *Id.* He states that he did not learn of his claims as presented in this petition until October 14, 2003, when so advised by his current post-conviction counsel. *Id.*

Petitioner states that he has lived in the United States since 1989, and has been married for over seven years. *Id.* He has a son who is a United States citizen. *Id.* He now has a college degree and, at the time the affidavit was executed, had been working for five years for a payroll software company. *Id.*, pp. 2-3; pp. 25-26 on ECF.

Joshua Turin, an immigration attorney in Texas, submitted an affidavit on behalf of Waseem Minhas. Exhibit C to document 56; doc. 56, pp. 21-23 on ECF. Turin states he was retained by Waseem Minhas to apply for adjustment of status to a lawful permanent United States resident. *Id.*, p. 1; p. 21 on ECF. The application for adjustment of status was denied due to his § 1542 passport fraud conviction. *Id.*, Ex. C, pp. 1-2; pp. 21-22 on ECF.[2] He states that the § 1542 conviction is considered a crime of moral turpitude rendering Defendant inadmissable under 8 U.S.C. § 1182(a)(2)(A)(i)(I). *Id.*, p. 2; p. 22 on ECF. Turin states that this conviction, coupled

---

[2] He also notes that prior to this conviction, Defendant had a state misdemeanor conviction related to prostitution, but standing alone the petty offense does not render Defendant deportable. *Id.* But as the § 1542 "counted as a second conviction of a crime of moral turpitude, [it] made him deportable under INA 237(a)(2)(ii), as well." *Id.*

with an earlier misdemeanor related to prostitution, resulted in two convictions for crimes of moral turpitude, rendering Defendant Waseem Minhas deportable under INA 237(a)(2)(ii).  *Id.*  Turin states that the state misdemeanor, standing alone, did not make Waseem Minhas deportable because he qualified for the Petty Offense Exception to inadmissibility under 8 U.S.C. § 1182(a)(2)(A)(i)(I).  *Id.*  Turin states that the passport conviction "makes it extremely unlikely that Mr. Minhas would be able to obtain a green card and remain in the United States."  *Id.*  Mr. Turin says that to have any chance of remaining in this country with his family, Defendant's § 1542 conviction must be vacated and Defendant be allowed to enter a plea under a similar statute (such as 18 U.S.C. § 1544, attempted use of a passport), carrying the same maximum sentence of 10 years in prison but which would not be considered a crime of moral turpitude.  *Id.*, pp. 2-3; pp. 22-23 on ECF.

Petitioner Naveen Minhas, who was represented by Claudia Wright at trial, brings the same two claims.  He asserts under penalty of perjury that he asked his attorney whether his guilty plea to the offense of making a false statement on a passport application would subject him to deportation, and he avers that she "affirmatively and erroneously advised Petitioner that his conviction would not trigger deportation consequences."  Doc. 65, p. 7.  He asserts that this was erroneous because upon conviction, pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I), Petitioner Naveen Minhas became "inadmissible."  *Id.*  Petitioner argues that he had the same mitigating factors, and could have negotiated a plea to an offense not having deportation consequences or would have gone to trial.  *Id.*, p. 8.  Petitioner Naveen Minhas, however, did not have a prior misdemeanor conviction for a state crime of moral turpitude.  Finally, Petitioner brings

the same claim of an involuntary plea, arguing that the court erred in failing to tell him that a jury would consist of twelve members and a verdict would require unanimity.  *Id.*

The affidavit of Dina Corigliano, an immigration attorney in New York, on behalf of Naveen Minhas, is Exhibit C to document 66; pp. 22-25 on ECF.  Corigliano was retained to file an application for adjustment of status for Naveen Minhas, but postponed filing the application because, in her opinion, when the application is filed deportation proceedings will commence due to the § 1542 passport fraud conviction.  Doc. 66, Ex. C, pp. 1-2; pp. 22-23 on ECF.  Counsel explains that the offense is considered a crime of moral turpitude, and Defendant is inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I). *Id.*, p. 2; p. 23 on ECF.  Like Turin, Corigliano suggests that Defendant be allowed to enter a plea under 18 U.S.C. § 1544.  *Id.*

Each Defendant is now married to a United States citizen and has a child who is a United States citizen.  Neither has been arrested or convicted since the 1994 convictions.  Both have submitted numerous letters attesting to their good character and achievements since the 1994 conviction.

That both Defendants were subject to exclusion, should they leave the country, is also confirmed by a memorandum to the court by the probation officer dated August 15, 1995.  The memorandum was prompted by Defendants' request to travel to Pakistan to attend a wedding.  Doc. 46, p. 2.  As reflected there:

> [T]he Court should be aware the defendants are classified by Immigration and Naturalization Service, as "LU-2" which is a "legalization case."  The defendants entered this Country on Student Visas, without employment authorization.  As long as they remain full-time students at an accredited university or college, they can remain in this Country.  When their student status is terminated . . . their student status will be revoked and they will be deportable.  Immigration rules state if a legal alien in this Country on a

Student Visa graduates from an accredited college or university, he or she can apply for a Work Visa to gain practical experience.  This Work Visa will last for one year and the university or college that the individual graduated from has to endorse the request before Immigration and Naturalization Service (INS) will take it under consideration.  Both are out of college and neither has a Work Visa, though both are employed full-time.

*The Court should also note that the defendants' conviction in Federal Court, does not automatically place them in a deportable status because they were not convicted of a drug crime and they were not sentenced to one year or more in jail.*

Individuals in "LU-2" status are Middle Easterner applicants that qualify under the class action law suit . . . claiming that this class of individuals were not afforded every opportunity available to apply for naturalization. *Until this lawsuit is settled, the defendants are not deportable.*

This writer [confirmed the "LU-2" status with the INS office in Jacksonville, which] *confirmed the defendants are not deportable, however, they could be "excluded" from reentry to the United States based on their convictions.*

Exclusion is "a State Department process that disallows individuals from obtaining a Visa to reenter this Country."  Based on the defendants' conviction, *there is a possibility they could be excluded for moral turpitude reasons and not allowed back into this country once they leave.*

*Id.*, pp. 2-3 (emphasis added).

The emphasized statement as to whether Defendants were deportable based solely on their § 1542 conviction was correct as to Naveen Minhas.  It was not correct as to Waseem Minhas, however, due to his misdemeanor conviction.

**Legal analysis**

    **The law governing *coram nobis***

A petition for writ of error *coram nobis* is a proper remedy for a defendant no longer in custody.  <u>United States v. Peter</u>, 310 F.3d 709 (11th Cir. 2002) ("[a] writ of error *coram nobis* is a remedy available to vacate a conviction when the petitioner has

served his sentence and is no longer in custody, as is required for post-conviction relief under 28 U.S.C. § 2255.").

Coram nobis, however, is limited remedy.  "The writ of error coram nobis is an extraordinary remedy of last resort available only in compelling circumstances where necessary to achieve justice;" it is "limited to review of errors 'of the most fundamental character.' "  United States v. Mills, 221 F.3d 1201, 1203 (11th Cir. 2000), cert. denied, 531 U.S. 1144 (2001), quoting United States v. Mayer, 235 U.S. 55, 69, 35 S.Ct. 16, 59 L.Ed. 129 (1914) (other citation and footnote omitted).  Coram nobis is available only:

> when the error involves a matter of fact of the most fundamental character which has not been put in issue or passed upon and which renders the proceeding itself irregular and invalid.

Moody v. United States, 874 F.2d 1575, 1576-1577 (11th Cir. 1989), cert. denied,  493 U.S. 1081 (1990).

Coram nobis is not available for claims for which a motion for a new trial is available, that is, claims going to "prejudicial misconduct in the course of the trial, misbehavior or partiality of jurors, and newly discovered evidence."  Moody, 874 F.2d at 1577, quoting, Mayer, 235 U.S. at 69, 35 S.Ct. at 19 (emphasis by the Court).

> The bar for coram nobis relief is high.  First, the writ is appropriate only when there is and was no other available avenue of relief.  Second, the writ may issue "only when the error involves a matter of fact of the most fundamental character which has not been put in issue or passed upon and which renders the proceeding itself irregular and invalid."

Alikhani v. United States, 200 F.3d 732, 734 (11th Cir.), cert. denied, 531 U.S. 929 (2000) (emphasis added) (citing Morgan, other citation omitted).  See also United States v. Esogbue, 357 F.3d 532, 534 (5th Cir. 2004) (coram nobis "will issue only to correct errors resulting in a complete miscarriage of justice.")  (citation omitted).

*Coram nobis*:

> was traditionally available only to bring before the court factual errors
> "material to the validity and regularity of the legal proceeding itself," such
> as the defendant's being under age or having died before the verdict.
> [*quoting Mayer*].  Moreover, "[t]he All Writs Act is a residual source of
> authority to issue writs that are not otherwise covered by statute.  Where a
> statute specifically addresses the particular issue at hand, it is that
> authority, and not the All Writs Act, that is controlling."  *Pennsylvania
> Bureau of Correction v. United States Marshals Service*, 474 U.S. 34, 43,
> 106 S.Ct. 355, 361, 88 L.Ed.2d 189 (1985).  As we noted a few years after
> enactment of the Federal Rules of Criminal Procedure, "it is difficult to
> conceive of a situation in a federal criminal case today where [a writ of
> *coram nobis* ] would be necessary or appropriate."  *United States v. Smith*,
> [331 U.S. 469, 475, n. 4, 67 S.Ct. 1330, 1334, n. 4, 91 L.Ed. 1610 (1947)].

Carlisle v. United States, 517 U.S. 416, 428, 116 S.Ct. 1460, 1467-68, 134 L.Ed.2d 613

(1996); *see also* Clinton v. Goldsmith, 526 U.S. 529, 537, 119 S.Ct. 1538, 1543, 143

L.Ed.2d 720 (1999) (quoting this language in part) (other citations omitted); Mills, 221

F.3d at 1205 (citing Carlisle and Mayer, noting the Court's comment that it was difficult

to conceive of a situation today where *coram nobis* would be necessary or appropriate).

The reported cases that have identified the types of claims that may be brought

by *coram nobis* are few.  While unpublished decisions usually should be avoided in

determining the state of the law, consideration of unpublished decisions is necessary

here.  The question is whether the two claims in this case allege error "of the most

fundamental character which has not been put in issue or passed upon and which

renders the proceeding itself irregular and invalid."  Alikhani, 200 F.3d at 734.

The clearest cases for *coram nobis* relief are United States v. Morgan, 346 U.S.

502, 74 S.Ct. 247, 98 L.Ed.2d 248 (1954) and United States v. Peter, 310 F.3d 709

(11th Cir. 2002).  In Morgan, the leading case, the petitioner sought *coram nobis* relief

from his expired federal conviction, used to enhance a subsequent state sentence.  He

claimed that he had not been represented by counsel nor had he waived counsel, and

that he was not advised of his rights.  346 U.S. at 511-512, 74 S.Ct. at 252-253.  The

Court said that it did "not think that the enactment of § 2255 is a bar to this motion," and

held "that the District Court has power to grant such a motion."  346 U.S. at 511, 74

S.Ct. at 252.  "Where it cannot be deduced from the record whether counsel was

properly waived, we think, no other remedy being then available and sound reasons

existing for failure to seek appropriate earlier relief, this motion in the nature of the

extraordinary writ of *coram nobis* must be heard by the federal trial court."  *Id.*, at 512,

74 S.Ct. at 253 (footnote omitted).[3]  Thus, Morgan found *coram nobis*  to be available

when a defendant was completely deprived of assistance of counsel.[4]

 *Coram nobis* relief was also found appropriate in United States v. Peter, 310 F.3d

709 (11th Cir. 2002).  Petitioner claimed that the facts supporting his guilty plea did not

constitute an offense in light of a Supreme Court case decided after his sentence had

expired.  310 F.3d at 711.  The court found that, "Peter's innocence of the charged

---

 [3] *Cf.* Custis v. United States, 511 U.S. 485, 495-497, 114 S.Ct. 1732, 1738-39, 128 L.Ed.2d 517 (1994) (challenge to a state conviction is not cognizable at the time of federal sentencing, allowing exception for a claim of failure to appoint counsel for an indigent defendant, which is a "unique constitutional defect," and not the same as ineffective assistance of counsel); Daniels v. United States, 532 U.S. 374, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001) (applying same rationale with same exception where defendant seeks to collaterally attack prior conviction used at federal sentencing through a motion under § 2255);  Lackawanna County District Attorney v. Coss, 531 U.S. 923, 121 S.Ct. 1567, 1573, 149 L.Ed.2d 608 (2001) (applying rationale where challenge is through a § 2254 petition).

 [4] *Cf.*, McCoy v. United States, 266 F.3d 1245, 1257 (11th Cir. 2001), *cert. denied*, 536 U.S. 906 (2002) (newly announced legal rules may be applied retroactively, *inter alia*, if the rule alters our understanding of the bedrock procedural elements essential to the fairness of a proceeding, citations omitted, citing Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) as perhaps the only example).

offense appears from the very allegations made in the superseding information, not from the omission of an allegation requisite to liability," and ruled as a consequence that the district court lacked jurisdiction to accept a guilty plea to a "non-offense."  *Id.*, at 715. The court held:  "[A] writ of *coram nobis* must issue to correct the judgment that the court never had power to enter."  *Id.*, at 716.  *Compare* Alikhani, 200 F.3d at 734-735 (lack of subject matter jurisdiction "may well be a proper ground for *coram nobis* relief as a matter of law," but a failure of an indictment to state an offense does not divest a court of jurisdiction).

On the other hand, the Eleventh Circuit found in Mills that *coram nobis* was unavailable to hear a claim of newly discovered evidence to show that the jurors improperly considered extrinsic evidence.  221 F.3d at 1205.  Likewise, in Moody our circuit held that "[a] claim of newly discovered evidence relevant only to the guilt or innocence of the petitioner is not cognizable in a *coram nobis* proceeding."  874 F.2d at 1277.

In light of Mills and Moody, is unclear whether a claim of ineffective assistance of counsel may be brought by *coram nobis.*  Moody "found it unnecessary to decide whether [a claim of ineffective assistance of counsel] is cognizable in a *coram nobis* proceeding."  874 F.2d at 1577, n. 3.  The court determined instead that the petitioner there had been aware of his claim at the conclusion of trial and could have brought this claim "in his habeas corpus petition."[5]  874 F.2d at 1578.  Therefore, *coram nobis* was not available to him.  *Id.*  Likewise, in a case arising from this district, United States v.

---

[5] The conviction was a 1972 federal conviction, so the court probably meant a § 2255 motion.

<u>Bejacmar</u>, 217 Fed.Appx. 919 (11th Cir. Feb 15, 2007) (not selected for publication in the Federal Reporter, No. 05-15640), the Eleventh Circuit again noted that it has not yet decided whether *coram nobis* is available to bring a claim of ineffective assistance of counsel. *Id.*, at 921. The court found, like in <u>Moody</u>, that the defendant had not presented "sound reasons for failing to seek relief earlier" by means of a § 2255 motion.[6] *Id.*, at 922.

United States v. Babalola, 2007 WL 2745769 (3rd Cir. Sep 21, 2007) (not selected for publication in the Federal Reporter, No. 06-3887) held that *coram nobis* is available to bring a claim of ineffective assistance of counsel. *Id.*, at *3, citing <u>United States v. Rad-O-Lite of Phila., Inc.</u>, 612 F .2d 740, 744 (3d Cir. 1979). The court held, however, that even though the defendant's attorney had affirmatively misinformed her as to the immigration consequences of her guilty plea, she had not shown prejudice to the outcome because she had not shown a reasonable probability that had she gone to trial, she would not have been convicted of the offense to which she entered a guilty plea. *Id.*, at *4. The court relied upon <u>United States v. Nino</u>, 878 F.2d 101, 105 (3d Cir. 1989).

Another unreported case from the Third Circuit, however, also involving alleged affirmative misadvice concerning deportation consequences, held that it was

> an open question whether counsel's error regarding the collateral consequences of a proceeding is fundamental to that conviction. *See United States v. Nino*, 878 F.2d 101, 105 (3d Cir. 1989) (declining to decide "whether counsel's failure to advise a client about the deportation

---

[6] In his *coram nobis* petition, the defendant in that case made a claim that his plea was involuntary for much the same reasons (deportation consequences) as he had raised in his § 2255 motion. *See doc.* 48, Case No. 4:96cr45-RH (report and recommendation on § 2255 motion).

consequences of a guilty plea can constitute deficient representation
absent special circumstances").

Evola v. Atty. Gen. of U.S., 190 Fed.Appx. 171, 174 (3rd Cir. Jul 26, 2006) (not selected

for publication in the Federal Reporter, No. 05-2508).  The court assumed (without

deciding) that it was, and again relied upon the Nino decision to find that the petitioner

had not shown a reasonable probability of avoiding conviction had he gone to trial.

The Fifth Circuit has held that "ineffective assistance of counsel, if proven, can be

a grounds for *coram nobis* relief."  United States v. Esogbue, 357 F.3d 532, 534 (5th

Cir. 2004), *citing,* United States v. Castro, 26 F.3d 557 (5th Cir. 1994).  Following

Morgan, the court cautioned that the claimant must have "sound reasons" for having not

properly made the claims while still in custody:

> Thus, in order to establish his entitlement to the writ, Esogbue must, *inter
> alia*, provide "sound reasons" for his failure to seek permission to assert
> the claims alleged in his *coram nobis* petition in a successive petition
> under 28 U.S.C. § 2255 while he was still in custody.  An assertion that he
> would have been unable to satisfy the stringent standards for filing a
> successive § 2255 motion while he was in custody is not such a "sound
> reason."  *See Godoski v. United States*, 304 F.3d 761, 763 (7th Cir. 2002)
> ("*coram nobis* is a common-law writ, and it is entirely inappropriate for the
> judiciary to invoke the common law to override limitations enacted by
> Congress, such as the period of limitations in § 2255"), *cert. denied*, 537
> U.S. 1211, 123 S.Ct. 1304, 154 L.Ed.2d 1059 (2003); *Matus-Leva v.
> United States*, 287 F.3d 758, 761 (9th Cir.) ("A petitioner may not resort to
> *coram nobis* merely because he has failed to meet the AEDPA's
> gatekeeping requirements.  To hold otherwise would circumvent the
> AEDPA's overall purpose of expediting the presentation of claims in
> federal court and enable prisoners to bypass the limitations and
> successive petitions provisions."), *cert. denied*, 537 U.S. 1022, 123 S.Ct.
> 544, 154 L.Ed.2d 431 (2002).

357 F.3d at 535.

In contrast, the First Circuit held in Enwonwu v. United States, 199 Fed.Appx. 6

(1st Cir. Sep 26, 2006) (not selected for publication in the Federal Reporter, No.

06-1825), another deportation case, that a claim of ineffectiveness of trial counsel is not "error of the most fundamental character" necessary to invoke *coram nobis*.

In United States v. Kwan, 407 F.3d 1005 (9th Cir. 2005), the Ninth Circuit held that an ineffective assistance of counsel claim may be brought by *coram nobis*. This case, cited by Defendants, is the most favorable case in support of their ineffectiveness claim. In Kwan, a guilty plea was entered on July 9, 1996. 407 F.3d at 1008. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) was enacted September 30, 1996. *Id.* The Act amended the definition of an "aggravated felony" to include an offense for which was imposed a prison sentence of "at least one year," rather than the former version, "at least five years." *Id.*, at 1008-1009. The changes were made retroactive. *Id.*, at 1009. Kwan was not sentenced until December 2, 1996, but his attorney did not inform him that this Act "would almost certainly cause him to be deported." *Id.* He was sentenced to one year and one day, making him subject to deportation because the sentence was not less than one year. *Id.*

The court reasoned that even though Kwan could have brought this claim by § 2255 motion, he was no longer in custody and the remedy was now unavailable to him. *Id.*, at 1012. The court found that "a petitioner is not barred from seeking coram nobis relief simply because he could have sought relief while in custody." *Id.*

The court also found that Kwan had shown "valid reasons for delaying." He had hired immigration counsel and first pursued his immigration remedy. *Id.*, at 1013-1014. It thus found *coram nobis* to be an available and proper remedy.

Addressing the merits, the court said that under the 1996 IIRIRA, Kwan had pleaded guilty to an offense which "would almost certainly cause him to be deported,"

yet counsel did not so advise nor did he advise defendant that he "potentially could avoid deportation, either by renegotiating his plea agreement or by receiving a sentence of less than one year." *Id.*, at 1009.  The court found fundamental error justifying *coram nobis* relief based on ineffective assistance of counsel.  It determined that counsel had given affirmatively erroneous advice regarding immigration consequences and prejudice had been shown.  *Id.*, at 1014-18.  The court thought the possible ignorance of counsel was no excuse, and that "[a]t the time that Kwan was prosecuted, Congress's efforts to revise immigration law were widely reported, as was the ultimate enactment of the IIRIRA." *Id.*, at 1016.

Kwan was later distinguished by the Ninth Circuit in United States v. Riedel, 496 F.3d 1003 (9th Cir. 2007).  In that case, the petitioner sought *coram nobis* while no longer in custody, claiming that the statute of conviction was unconstitutionally vague and that the evidence for conviction had been insufficient.  496 F.3d at 1004.  The court found that petitioner's diminished capacity, the forfeiture of her property, and her deportation to Austria, were not valid reasons for not bringing the claims by direct appeal of by means of a § 2255 motion.  *Id.*, at 1006-1007.  The court concluded that *coram nobis* was precluded.

In Park v. United States, 222 Fed.Appx. 82 (2d Cir. Mar 30, 2007) (not selected for publication in the Federal Reporter, No. 05-6883-pr), the court found valid reasons for not bringing the *coram nobis* claim earlier, while still in custody, because "Park challenged the charge of deportability and was still awaiting a final decision from the Board of Immigration Appeals when he filed this petition."  *Id.*, at *83.  Park is probably a case where the offense and conviction occurred after the IIRIRA had been enacted,

given the date of the decision.  The court ruled  the ineffective assistance of counsel claim to be without merit.  *Id.*, at *83-84.  It reasoned that the petitioner "faced overwhelming evidence of his guilt," there was a "strong likelihood of conviction at trial," a conviction would have triggered the same deportation consequences, and he probably would have received a longer sentence had he been convicted after a trial.  *Id.*  The court concluded that prejudice to the outcome had not been shown.  *Id.*, at *84.

A case more like the case at bar is Rivera-Esquivel v. United States, 198 F.3d 258 (10th Cir. Oct. 14, 1999) (table), 1999 WL 820232, Case No. 99-2034.  The conviction in that case occurred before the IIRIRA was enacted.  *Id.*, at *1.  The conviction was challenged by *coram nobis*.  The court found no ineffective assistance of counsel based upon the law relevant at the time of the guilty plea.  *Id.*, at *2.  The court found that at the time of the guilty plea, counsel was under no obligation to give advice as to the collateral consequences of deportation.  *Id.*  Cited for this was Varela v. Kaiser, 976 F.2d 1357, 1358 (10th Cir. 1992), *cert. denied*, 507 U.S. 1039 (1993).

In United States v. LaPlante, 57 F.3d 252 (2d Cir. 1995), another *coram nobis* case, the court rejected a claim of ineffective assistance of counsel for failing to seek a "judicial recommendation against deportation."  57 F.3d at 253.  The court noted that the sentencing judge said that "he would not have made a recommendation against deportation, had one been sought."  *Id.*  Thus, reasoned the court, prejudice to the outcome had not been shown.  *Id.*

Upon consideration of all of these cases, it may be that an ineffective assistance of counsel claim can be brought by *coram nobis*.  As discussed ahead, a successful claim of ineffectiveness is rare.  There must be a showing of serious attorney error.

There also must be a showing of prejudice sufficient to undermine confidence in the outcome.  Such findings would implicate the integrity of the proceeding.  But it is unnecessary to this court's decision to decided this difficult question.  Instead, since the issue has not been clearly decided in this circuit, it is enough to assume that a claim of ineffective assistance of counsel may be brought by *coram nobis*.

The jury claim is another matter.  The jury claim is much like a claim of newly discovered evidence, or that the statute that created the offense was void for vagueness, or that the evidence was insufficient.  As the cases discussed above hold, such claims are not errors of the most fundamental character rendering the proceeding itself irregular and invalid, and thus cannot be brought by *coram nobis*.  That the court did not explain that a jury must consist of twelve members and that the verdict must be unanimous was not an error of the most fundamental character rendering the guilty plea proceeding itself irregular and invalid.  This claim cannot be brought by *coram nobis*.

This leaves for consideration the ineffective assistance of counsel claim.  The next issue is whether Defendants have shown valid reasons for not bringing their ineffective assistance of counsel claims earlier by a more conventional method.  To reiterate, "courts may consider *coram nobis* petitions only where no other remedy is available and the petitioner presents sounds reasons for failing to seek relief earlier." Mills, 221 F.3d at 1204, *citing*, Morgan, 346 U.S. at 512.  If Defendants in the case at bar were in custody and proceeded under § 2255, they would be subject to a one year limitations period, which generally runs from the date on which the conviction became

final. § 2255, ¶ 6(1).[7]  Later dates to commence the period include the date on which a

government created impediment to filing is removed, the date on which a newly

recognized right was initially recognized by the Supreme Court, and the date on which

supporting facts could have been discovered by the exercise of due diligence.  § 2255,

¶ 6(2) - (4).  Thus, it makes sense that a *coram nobis* petitioner must demonstrate

"sound reasons" for not filing sooner.

Defendants argue that there are sound reasons for failing to raise the

immigration claim sooner.  Specifically, Waseem Minhas states that he did not become

aware of the grounds for relief until October 14, 2003, and he and Naveen Minhas were

not "aware of the full impact of the serious adverse consequences" of the § 1542

conviction until May 19, 2003, and December of 2005, respectively.  Doc. 56, p. 4; doc.

66, p. 4.  Both assert that counsel affirmatively told them at the time of their guilty pleas

that their convictions would no adverse immigration effects.  Since there has been no

evidentiary hearing, these assertions will be assumed to be true.  It also will be

assumed  without deciding that these circumstances are "sound reasons" for not

bringing the ineffectiveness claims sooner.[8]  Thus, the court should address the merits

of these ineffectiveness claims.

---

[7] Since Defendants' convictions were final before April 24, 1996, the effective
date of the amendment creating the limitations period, they would have had one year
from that date to file a their § 2255 motions.  Goodman v. United States, 151 F.3d 1335,
1337 (11th Cir. 1998).

[8] Waseem Minhas did not file his motion until December 23, 2005, doc. 55, more
than two years after he became aware of the grounds for relief.  If the limitations of the
AEDPA for filing a § 2255 motion are to guide the questions of whether the petition for
writ of *coram nobis* has been timely filed, it is possible that his petition is untimely.
Naveen Minhas filed more promptly after he became aware of the adverse
consequences, on May 9, 2006.  Doc. 65.  The court need not decide this issue.

The law governing ineffective assistance of counsel was established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984).  Under the two part test of Strickland, Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."  Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc), *cert. denied,* 531 U.S. 1204 (2001).

For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068.  In the context of a guilty plea, the first part of the Strickland test is the same, but "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); Gordon v. United States, 496 F.3d 1270, 1277 (11th Cir. 2007), *quoting*, Hill.

A good summary of immigration law as it has evolved since Defendants were convicted is found in United States v. Couto, 311 F.3d 179 (2d Cir. 2002), not a *coram nobis* case.  There, the Second Circuit reversed denial of a motion to withdraw a plea based on counsel's affirmative advice regarding deportation.  Rearraignment in that case had been held in 2000 (several years after enactment of the IIRIRA), yet "no mention was made of any possible deportation."  *Id.*, at 183.  The court said:

> More specifically, no one informed Defendant that, because the 1996 amendments to the Immigration and Nationality Act eliminated all discretion as to deportation of non-citizens convicted of aggravated felonies, her plea of guilty meant virtually automatic, unavoidable deportation.

*Id.*, at 183-184 (footnote omitted).  The court noted that prior to 1990, the district judge could issue a binding judicial recommendation against deportation (JRAD), leaving the lack of a discretionary waiver by the United States Attorney General the only barrier to deportation.  *Id.*, at 189.  "But this degree of discretion, too, did not long survive," as the 1996 amendments eliminated this discretionary authority of the Attorney General.  *Id.* The circuit court found that it did not need to decide the difficult question of whether removal was a direct rather than collateral consequence of a guilty plea, given the automatic nature of removal following such a conviction, or whether the "direct versus collateral" distinction has relevance when the consequence is a "virtual certainty."  *Id.*, at 190-191 and n. 10.

The effectiveness of Defendants' attorneys in the case at bar must be judged by the law in place at the time the assistance was rendered.  Strickland, 466 U.S. at 689, 104 S.Ct. at 2065 ("every effort must be made to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time").

In 1994, when Defendants entered their guilty pleas, it was the law of this circuit that a failure to advise a defendant of the collateral consequences of a guilty plea does not violate the Sixth Amendment.  Ali v. U.S. Atty. Gen., 443 F.3d 804, 811 n. 7 (11th Cir. 2006), citing, United States v. Campbell, 778 F.2d 764, 768 (11th Cir. 1985). Campbell said that "[c]ounsel's affirmative misrepresentation in response to a specific inquiry from the defendant may, however, under certain circumstances, constitute ineffective assistance of counsel."  778 F.2d at 768-769, citing, Downs-Morgan v. United States, 765 F.2d 1534 (11th Cir. 1985) and United States v. Santelises, 509 F.2d 703 (2nd Cir. 1975).[9]

It is represented by the Government that both former attorneys did not affirmatively misadvise either Defendant as to the immigration consequences of their convictions.  Doc. 64, p. 2; doc. 71, p. 2.  However, since there has not been an evidentiary hearing, it will be assumed that Defendants' attorneys advised Defendants that there would be no immigration consequence at all from the § 1542 convictions.  It will be further assumed that the advice was legally erroneous as to both Defendants in that both would have been subject to exclusion, if they were to leave the United States,

---

[9] In Downs-Morgan v. United States, 765 F.2d 1534 (11th Cir. 1985), the court declined to "hold that an affirmative misrepresentation by an attorney in response to a specific inquiry by the accused which results in a plea of guilty necessarily constitutes ineffective assistance of counsel," noting that the issue is whether the advice was reasonable under the circumstances. 765 F.2d at 1540-1541.  The court reasoned that immigration information in that case might have been "crucial to the informed nature of the plea," and that "misinformation from counsel may render the guilty plea constitutionally uninformed."  Id., at 1541.  Since the defendant there had made "at least a colorable claim of innocence," a remand for an evidentiary hearing was required.  Id.

based upon the § 1542 passport fraud convictions, which were crimes of moral turpitude.[10]  8 U.S.C. § 1182(a)(2)(A)(i)(I) (1994).  It will also be assumed that the advice to Waseem Minhas as to his deportation status was legally erroneous because he became subject to deportation with the § 1542 conviction due to his prior misdemeanor conviction, which resulted in two convictions for crimes of moral turpitude.[11]  8 U.S.C. § 1251(a)(2)(A)(i) and (ii) (1994).  Finally, it will be assumed without deciding that this was attorney error as defined by Strickland.

The critical issue is whether Defendants have come forward with evidence of prejudice to the outcome.  Both have asserted that had they received correct legal advice about their immigration status, they would have insisted upon going to trial or would have negotiated a plea to an offense not carrying the "moral turpitude" classification.

The "prejudice" inquiry in the context of a guilty plea "will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial."  Hill, 474 U.S. at 59, 106 S.Ct. at 370.  In other words, the question of whether a defendant would have insisted upon going to trial had attorney error not occurred with respect to the guilty plea will turn in large part upon whether the defendant might reasonably have achieved a more favorable outcome had he gone to trial.  United States v. Rosario, 902 F.2d 55, 58 (D.C. Cir.), cert. denied, 498 U.S. 942 (1990).  The Court in Hill explained:

---

[10] The § 1542 offense is a crime of moral turpitude as defined in 8 U.S.C. § 1182(a)(2)(A)(i)(I).  Rodriguez v. Gonzales, 451 F.3d 60, 65 (2d Cir. 2006).

[11] The Government does not dispute the assertion that the misdemeanor was a crime of moral turpitude.

> For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. *See, e.g., Evans v. Meyer*, 742 F.2d 371, 375 (CA7 1984) ("It is inconceivable to us . . . that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received").

Hill, 474 U.S. at 59, 106 S.Ct. at 370-371. *See also*, Park v. United States, *supra*, 222 Fed.Appx. at *84 (even if he had been aware of the immigration consequences of his plea, defendant faced a strong likelihood of conviction at trial and such a conviction would have triggered the same deportation consequences and would probably have resulted in a longer sentence).

The Government represents that:

> As the Northern District of Florida criminal defense bar is well aware, the United States Attorney for this District does not significantly alter its plea agreements. They are and were in defendant's case, standardized formats with little, if any, room for negotiation. Defendants have been required to plead guilty to the most serious offense. This is consistent with United States Attorney's Manual which states that plea agreement charge(s) should be "the most serious readily provable charge consistent with the nature and extent of [the defendant's] criminal conduct." USAM, § 9-27.430. Defendant's background was no doubt considered for sentencing purposes but it had no impact on the charge to which he was required to admit guilt.

Doc. 64, p. 5; doc. 71, p. 5.

There is no reason to have an evidentiary hearing as to the truth of this representation.  This court is well aware that this has been the prosecutor's consistent policy in this district for many years.  An evidentiary hearing might be needed if Defendants could show that the United States Attorney would have agreed to allow a plea to an alternative offense that was not a crime of moral turpitude, but Defendants have not made such a showing.  The policy of the United States Attorney in this district is consistently applied, regardless of the equities in favor of a particular defendant.  It is a policy that is driven entirely by the offense behavior.  Thus, Defendants cannot show prejudice to the outcome.  *Cf.*, United States v. LaPlante, 57 F.3d 252, 253 (2d Cir. 1995) (defendant could not show prejudice to the outcome because the trial judge "indicated that he would not have made a recommendation against deportation, had one been sought.").

Nor have Defendants come forward with evidence that had they gone to trial, they would have been convicted of a lesser offense or would have been acquitted. There is no colorable showing of innocence of the § 1542 charge.  The evidence for conviction is not known, but Defendants have the burden of showing that persistence in a not guilty plea was an attractive option.  If, as it appears, conviction of the § 1542 count was a foregone conclusion, then Defendants would have obtained no benefit from going to trial.  Instead, they might have lost credit for acceptance of responsibility, might have received somewhat harsher sentences, and still would have faced the same immigration consequences.  *See*, Park, *supra*, 222 Fed.Appx. at *84 ("even had he been aware of the immigration consequences of a plea, Park would nonetheless have been faced with the strong likelihood of conviction at trial.  He would also have been

aware that such a conviction would trigger the same deportation consequences and would probably result in a longer sentence.").  For these reasons, the ineffective assistance claim affords no relief.

**Explanation of a jury trial**

For the reasons explained above, the jury trial claim does not implicate the fundamental integrity of the criminal proceeding.  Consequently, this claim cannot be brought by *coram nobis*.  If the district judge disagrees with this conclusion, the following discussion of the merits of this claim is provided.

Defendants assert that they were not advised that there would be twelve jurors who must agree unanimously on a verdict.  The case of United States v. Martin, 704 F.2d 267 (6th Cir. 1983) is cited and quoted in support.  Doc. 56, pp. 15-16; doc. 66, pp. 16-17.  They contend that their guilty pleas, and accompanying waiver of a jury trial, were not knowingly entered for this reason.

Martin involved a waiver of a jury trial.  The court there said that "[a]t a minimum, a defendant should be informed that a jury is composed of 12 members of the community, he may participate in the selection of jurors, the verdict of the jury must be unanimous, and that a judge alone will decide guilt or innocence should he waive his jury trial right."  704 F.3d at 274-275 (citation omitted).  The case was decided in 1983. There is no allegation as to when Defendants may have discovered this ground for relief, or why they could not have discovered it sooner.  This *coram nobis* claim is barred for this additional reason.

Moreover, even in the Sixth Circuit, the advice suggested in Martin is not considered a constitutional requirement.  "The statement that this knowledge is

*sufficient* is not, of course, equivalent to a statement that it is constitutionally required."

Sowell v. Bradshaw, 372 F.3d 821, 832 (6th Cir. 2004), *cert. denied*, 544 U.S. 925

(2005), *quoting* (with original emphasis) United States v. Sammons, 918 F.2d 592, 597

(6th Cir. 1990).  Neither Martin nor Sammons "established a constitutional requirement

that the defendant understand that the verdict must be unanimous," or that defendant

understand he had the right to participate in jury selection.  372 F.3d at 833.  As stated

in this circuit:

> A court accepting a guilty plea must comply with Rule 11 and specifically
> address three "core principles," ensuring that a defendant (1) enters his
> guilty plea free from coercion, (2) understands the nature of the charges,
> and (3) understands the consequences of his plea.  To ensure compliance
> with the third core concern, Rule 11(b)(1) provides a list of rights and other
> relevant matters about which the court is required to inform the defendant
> prior to accepting a guilty plea, including: the right to plead not guilty (or
> persist in such a plea) and to be represented by counsel; the possibility of
> forfeiture; the court's authority to order restitution and its obligation to
> apply the Guidelines; and the Government's right, in a prosecution for
> perjury, to use against the defendant any statement that he gives under
> oath.

United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (citations omitted).  As

the rule was configured in 1994, substantially similar requirements were set forth in Rule

11(c).   The rule did not then and does not now require the court to advise of the right to

a jury consisting of twelve members and a unanimous verdict.  *See also* Chang v.

United States, 305 F.Supp.2d 198, 204 (E.D. NY 2004) (rejecting argument that plea

was involuntary for failure to explain the unanimous verdict requirement; petitioner cited

no case from the Supreme Court or the Second Circuit requiring such an explanation,

and Rule 11 does not require it).  If the court were to reach the merits of this claim, it

should find it to be without merit.

**Conclusion**

For these reasons, it is **RECOMMENDED** that the petitions for writs of *coram nobis* filed Waseem Minhas and Naveen Minhas, docs. 55 and 65, be **DENIED with prejudice**.

**IN CHAMBERS** at Tallahassee, Florida, on December 26, 2007.


s/    William C. Sherrill, Jr.
WILLIAM C. SHERRILL, JR.
UNITED STATES MAGISTRATE JUDGE


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case Nos. 4:94cr4046-WS and 4:06cv227-WS/WCS (Naveen Minhas)